Carr., J.
It was contended by the counsel for the appellant, that this case was wrong from the foundation, because the plaintiff, a creditor at large, had filed his bill for the sale of his debtor’s land; that this was done upon the pretext, that Kelso was an absent defendant, when in truth he was not; but that if he was, the law as at that day, gave no such remedy against the debtor’s land; and if it had, Kelso, in the progress of the suit, having appeared and filed his answer, could not be decreed against as an absent defendant. For the appellee, it was insisted, that the bill made a case clearly within the jurisdiction of the court; that, namely, of an absent defendant having land here, which he had fraudulently conveyed to his children ; and as there was no denial of the absence of the debtor when the suit commenced, by plea in abatement to the jurisdiction, his ap *306 pearance afterwards, could not affect the jurisdiction, or the , , , . decree to be rendered.
The proceeding by foreign attachment against absentees, is an innovation upon the common law; a proceeding in rem, founded on the necessity of the case, lest there should be an absolute failure of justice; and, like all ea? parte proceedings, it is liable to great abuse, unless carefully watched, and strictly confined to the ground covered by the law. It is not under their general jurisdiction, that courts of equity take cognizance of these cases, but finder particular statutes; and these, it will be found, have, with special care, marked out the extent, and described the manner, of the proceeding. Our earliest act upon this subject (that I have met with) was passed in 1744, and may be found in 5 Hen. stat. at large, p. 220. It has remained the law ever since, with few alterations, until the revisal of 1819; when an important change (to be noticed presently) was made. The preamble to the act of 1744, states, concisely and clearly, the mischief to be remedied. “Whereas creditors have experienced great difficulties in the recovery of debts due from persons residing without the jurisdiction of this commonwealth, but who have effects here, sufficient to satisfy and pay such debts: for remedy whereof, be it enacted” &jc. We see here, that the very foundation of this jurisdiction is the non-residence of the debtor, and his having effects here. The next section shews more particularly, the meaning given to the word effects: it speaks of a suit in equity against a defendant who is out of this country, and others within the same, “ having in their hands effects of, or otherwise indebted to, such absent defendant.” Thus the law stood from 1744 to 1819.' The language here used, plainly evinces, that the remedy did not reach the real estate of the absentee; and the uniform practice under the law, so far as I have seen, proves that such was the understanding. At the revisal of 1819, we find the words just quoted as existing in the old law, and immediately following are these, “ or against every such absent defendant, *307 having lands or tenements within the commonwealth.” And in an after part of the statute, we find a clause providing with special care, for the mode of proceeding, in order to subject the land of absent defendants to sale. Until this law took effect, it may be safely affirmed, that no land of an absent defendant could be decreed to be sold under a foreign attachment. Let us return to the form in which the suit is to proceed. The law prescribes, that if, “ in any such suit, the appearance of the absentee be not entered, and security given, to the satisfaction of the court, for performing the decree; upon affidavit that such defendant is out of the country, or that upon inquiry at his usual place of abode he could not be found, so as to be served with processthen, the court is to take proper steps for the safety of the debts or effects; then also, it is to appoint some day in the next term, for the absent defendant to enter his appearance, and give security for performing the decree ; and this order is to be published. If the absentee shall fail to comply with this order, by appearing and giving security, the court may then proceed to a final decree; subject to be opened within seven years, by the appearance of the absentee &sc. and such proceedings are then to be had, as if he had appeared at the first filing of the bill. It will be observed how careful the law has been in these provisions, to guard against abuse : 1. the defendant must have failed to appear to the subpoena; 2. there must be an affidavit that he is out of the country, or that upon inquiry at his usual place of abode, he could not be found, so as to be served with process ; 3. there must be a day of appearance given; 4. this must be published, both in the newspapers for two months, and at the door of the courthouse. Without these proceedings, there can be no foreign attachment; no decree against an absentee; no sale of his effects or estate. The affidavit, especially, lies at the very root of the proceeding ; without it, the court cannot take a single step. It seems to be the idea of some, that this affidavit comprehends as well him who absconds and conceals himself, as *308 him who is out of the country; but this appears clearly to me to be a mistake. This part of the statute is dealing wholly with persons residing without the jurisdiction of the commonwealth. The legislature knew, that a person indebted, and about to leave the state, would often remove so secretly as to put it beyond the power of his creditor, to prove whither he had gone : in such case, it was considered, that an affidavit, that upon inquiry at his usual place of abode, he could not be found, was sufficient evidence of non-residence, to found and commence the proceeding. That this is the meaning, seems still more clear from the 6th section of the same law, which authorizes a justice of the peace, to issue an attachment against a debtor, who “ is removing out of the county or corporation privately, or absconds or conceals himself, so that the ordinary process of law cannot be served on him.” This is a proceeding very different from a foreign attachment, and made for the express case of a debtor, who, without leaving the state, keeps out of the way of process.
Let us now briefly examine the case made by the record. The plaintiff, and the defendant James Kelso, had, it seems, for a number of years, resided in the county of Bath. The plaintiff alleges, in his bill, that after the debts due him by Kelso were contracted, and became due, Kelso very seldom appeared in Bath, having married in Louisa, or some of the lower counties of this state; and on very diligent inquiry, he could not be found in the county in which he was said to reside, and at length disappeared intirely, being said to have left the state and gone to parts unknown; that, at the commencement of this suit, he was reported to be an inhabitant of Kentucky, or at least, he was said to have been sometimes seen there. The bill then states several fraudulent conveyances of his land made by Kelso to his children, with intent to defraud his creditors; and prays the court to set aside these conveyances, and subject the lands, or so much of them as shall be found sufficient, to the satisfaction of the plaintiff’s claim. Taking this bill simply upon its face, is it *309 not demurrable ? I am clearly of opinion that it is. It is most defectively drawn, and so vague, that it is difficult to decide, whether the draftsman expected by the force of his bond alone, to attack the deed to the children, set it aside, and sell the land, or whether he thought to come to the same results, by treating the defendant as an absconding debtor; or whether the object was to proceed against him as an absent defendant. If he meant the first, we know that no creditor at large, can come into equity to impeach the conveyance of his debtor. To me it is equally clear, that the fact of a debtor’s so absconding or concealing himself, that the ordinary process of law cannot be served on him, confers no jurisdiction on a court of equity to sell his land. I think so, not only because I find no law giving such power, but because I find a law giving, in that express case, process of a different kind, against the personal goods, not the land of the debtor; to bring him before a legal not an equitable tribunal. But, even if equity would, under any circumstances, entertain a bill of this kind, against an absconding debtor, such bill must at least he accompanied by an affidavit that the debtor was absconding: here there is none such: and for this defect, the (fill was demurrable. But the third hypothesis, to wit, that Kelso was an absent defendant, seemed most relied on. Does the bill so state him ? I say no. There is no such averment. It says, indeed, (but even this, not sworn to), that at the commencement of the suit, he ivas reported to be an inhabitant of Kentucky, or at least, to have been sometimes seen there. This surely will not be said to be an averment of any thing: it is the statement of a vague rumour, that Kelso was sometimes seen in Kentucky, which might happen from a transient visit; and this, no one will contend, would justify a proceeding against him as an absent defendant. The bill then was demurrable, for this defect. But, again, at the time this hill was filed, there was no law (as I have already shewn) subjecting the lands of non-residents to sale for debt; and, therefore, if the bill had positively averred that Kelso was an absentee, it would have been demurrable.
*310 ' The proceeding was wholly irregular in other respects. There was no affidavit, either that the defendant was an absentee, or that on application at his usual place of abode, he could not be found; and this, we have seen, is necessary. There was no day of appearance given him; no publication; in truth no one step, which the law directs to be taken against an absentee; but process after process was issued, and the cause continued from rules to rules as to Kelso, just as it would be against a resident defendant. Again; suppose we consider the allegation that Kelso was an absentee, properly and directly made by the bill, there are the answers of three defendants, put in promptly after the bill was filed, directly contradicting the allegation, and averring that Kelso was’ and had been living in Louisa, where he was a housekeeper and farmer, for four years; which would make him a resident there, before the commencement of this suit, and one of the defendants denied, that he ever lived in Kentucky. Will it be said that these defendants had no concern with this fact, and that their answers cannot be evidence for the other defendant? The reply is, that they are concerned, and deeply interested, in the fact: for the sole pretence on which this creditor at large, could call them into court, was the non-residence of their father. If they had brought into court, full proof that their father was, at the commencement of the suit, and had been ever since, residing on his farm in Louisa, amesnable to process, can any body doubt, that the court, without any appearance or answer of the father, should have dismissed the whole proceeding ? And, though they have not brought in this plenary proof, they have, by answers responsive to the bill, disproved the allegation; and that is enough, until the plaintiff countervail it by sufficient proof, which he has not done. But afterwards Kelso himself appeared, and filed his answer: if the plaintiff had considered him still a non-resident, he would, of course, have objected to this appearance, unless he gave bond and security to perform the decree; and, if he had so objected, the court would have *311 required such bond and security, unless the residence of the defendant had been proved to its satisfaction. But, so far from objecting, the plaintiff assents, by taking at once a replication to the answer. This changed the aspect of the case: the defendant was no longer an absentee, but rectus in curia : the attached property was discharged; and the cause would proceed, like any other, to a hearing. If, on the hearing, the court considered, that the case made by the bill gave it jurisdiction, it would' render a personal decree for the debt, which the plaintiff might enforce as he could any other decree or judgement. It is admitted, on all hands, that an appearance discharges the attachment, where the property attached is personal. Surely, the same effect follows where land is attached, both from the reason of the case, and the care with which the land of an absentee is protected from sale, while there is any personal fund in the power of the court. And this very point was decided in Tiernans v. Schley &c. 2 Leigh, 25. In that case, the appearance of the absent defendant was what, in the judgement of this court, changed the nature of the suit, and discharged the land. In the case before us (as I have said) the plaintiff may fairly be taken to have assented, since, without objection, he took a replication to the answer; or, if he did not assent, the court might have had full proof before it, that the defendant had never been an absentee, in which case it ought not to have required security; and, as it might have had such proof, we are bound, until the contrary appears, to presume, that it did have it, if such presumption be necessary to justify its proceedings.
I have been thus particular in my examination of this case, because my experience, especially in the western chancery court, has convinced me, that this process, unless narrowly watched, is liable to great abuse. I think the case wrong from the foundation, and that the decree should be reversed, and the bill dismissed.
*312 Cabell, J.
It has been repeatedly decided by this court, that a creditor at large, having no judgement or other lien on the property of his debtor, cannot prosecute a suit in equity, for the purpose of setting aside a fraudulent conveyance of property by the debtor. To this general rule, there is, however, one exception; and that is where the debtor by removal out of the state, or by evading the process of the law, puts it out of the power of the creditor, to obtain a judgement at law. But, in such case, the fact of non-residence, or of evasion of legal process, must be averred in the bill, and proved to the satisfaction of the court. If the fact be not proved, it is the same as if it had not been averred, and then there is no ground,to support the jurisdiction of the court as against the fraudulent alienees. In the case before us, the fact of residence beyond the limits of the state, was expressly denied and put in issue by the answers; and there is no proof to support the averment in the bill, except the testimony of a witness, who speaks of a vague report, that the debtor had removed to the state of Kentucky. This testimony cannot prevail against the answers. As to the evasion of the process of the law, there is no evidence whatever, except as to the difficulty of serving process in the county of Bath. But the debtor was not an inhabitant of that county, according to the allegation of the bill itself. To justify the interference of a court of equity, on this ground, it is necessary, that it should be proved to the court, that the defendant, upon inquiry at his or her usual place of abode, could not be found. There is no such proof in this case. Nor did the plaintiff proceed, in any respect, as directed by law in the case of absent defendants, or defendants evading the process of the law. He has not, therefore, entitled himself to proceed against the alienees of the debtor’s property; and as to them, the bill ought to have been dismissed, whatever decree the plaintiff may have been entitled to as against the debtor himself. But, in truth, he was not entitled to any decree, even as against the debtor; for even according to the bill, the claim was purely of a le *313 gal nature. A general demurrer to the bill, as between the plaintiff and the debtor, would have been sustained. Therefore, I am of opinion, that the decree should be reversed, and the bill dismissed.
Brooke, J. concurred in the opinion of judge Cabell.